UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAMERON FORREST KIGGINS,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

**DECISION & ORDER**
17-cv-6642-JWF

## Preliminary Statement

Plaintiff Cameron F. Kiggins ("plaintiff" or "Kiggins") brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his application for benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 12, 16. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 12) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 16) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

On April 14, 2015, plaintiff protectively filed applications for disability insurance benefits and child's insurance benefits based on the disability accounts of his mother and deceased father. Plaintiff's application was initially denied. Administrative Record (Docket # 8) ("AR"), at 256-77.

1

On September 19, 2016, plaintiff appeared pro se at an administrative hearing before Administrative Law Judge John P. Costello ("the ALJ"). AR at 77-86. At the hearing, plaintiff indicated that he would like the assistance of counsel and the ALJ rescheduled the hearing. Plaintiff appeared with counsel at the rescheduled hearing on December 6, 2016. At the hearing plaintiff and a vocational expert testified. AR at 87-113. On January 6, 2017, the ALJ issued an unfavorable decision. AR at 37-47.

Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on July 18, 2017, making this the final decision of the Commissioner. AR at 1-6. Kiggins commenced this action on September 14, 2017. Docket # 1. He filed his motion for judgment on the pleadings on June 4, 2018 (Docket # 12), and the Commissioner filed her motion for judgment on the pleadings on August 1, 2018 (Docket # 16). Plaintiff replied on August 22, 2018. Docket # 17.

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the

2

Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

Plaintiff is a young man (age 19 at the time of the hearing) who suffers from a myriad of serious mental health issues. In his decision, the ALJ acknowledged that plaintiff "has an extensive psychiatric history." AR at 42. According to the ALJ "[t]he record shows that the claimant has a multitude of mental symptoms, including irritability, verbal outbursts, conflicts with his mother, anxiety, mood swings, panic attacks, inattention and lack of focus" as well as "numerous suicidal gestures beginning in 2008." AR at 42-43. Based on the administrative record, the ALJ determined plaintiff had the following "severe impairments": bipolar disorder, cannabis abuse, oppositional defiant disorder, a history of attention deficit hyperactivity disorder, and dyslexia. AR at 39. Nevertheless, the ALJ decided that while "the claimant's symptoms are longstanding" they were "not totally disabling." AR at 43. According to the ALJ, despite his varied and severe psychiatric problems, plaintiff was fully capable of working full-time in a competitive employment environment so long as he was limited to "simple routine tasks that involve no more than occasional interaction with supervisors, coworkers and the general public." AR at 41. Plaintiff argues this determination was not supported by substantial evidence. I agree.

Plaintiff advances a number of arguments, all principally directed at the ALJ's treatment of the medical opinion evidence. Specifically, the ALJ did not assign significant weight to any medical opinion – not even that of plaintiff's treating physician. Instead, the ALJ accorded "partial weight" to the opinion of treating psychiatrist Michael Susco, M.D. and treating nurse practitioner Allison Murray, PMHNP-BC. AR at 44. He also assigned "partial weight" to the opinion of consultative psychologist Adam Brownfeld, Ph.D. AR at 44. Finally, the ALJ gave "limited weight" to the opinion of state agency consultant E. Kamin, Ph.D. AR at 44.

Of course, the most important of the above opinions was that of plaintiff's treating psychiatrist, Dr. Susco. The Commissioner advises disability applicants of the importance of submitting medical opinions from treating doctors. See 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). Plaintiff here was able to obtain two opinions from his treating mental health team. Both opinions were reports separately signed by both Dr. Susco, the treating psychiatrist, and Allison Murray, the treating board-certified Advanced Practice Psychiatric Mental Health Nurse Practitioner. In the first report, entitled "Mental Impairment Questionnaire," the ALJ was advised that plaintiff was diagnosed with disruptive mood disorder, borderline intellectual

4

functioning, and occupational and relational stress disorder. AR at 789. Plaintiff had been prescribed Zyprexa "for mood stabilization and anxiety/aggression" and Seroquel for "panic attacks." AR at 789. According to the report, the prescribed medications caused plaintiff dizziness, drowsiness, lethargy, mental fogginess and orthostatic hypotension. AR at 789. The treating providers informed the ALJ that plaintiff "does not have complex thought content." AR at 789. Instead, he simply "agrees to whatever is said." AR at 789. Plaintiff's "insight [is] poor" and although his "mood impairments may be moderately managed," his prognosis was described as "long-term impairments to cognition." AR at 789-90. This report listed numerous medically documented deficits, including difficulty thinking or concentrating, impairment of impulse control, memory impairment, persistent disturbance of mood or affect, and recurrent severe panic attacks occurring "on average of at least once a week." AR at 790. As far as functional limitations, the treating sources opined that plaintiff would have "marked" limitations in social functioning and "marked" deficiencies on concentration, persistence, or pace. AR at 791. According to the treating providers, plaintiff had chronic mental illness of at least two years that caused "more than a minimum limitation of ability to do any basic work activity." AR at 791. The treating sources did not believe that plaintiff could manage his own benefits. AR at 792.

5

The second opinion form completed by Dr. Susco and NP Murray was entitled "Medical Source Statement of Ability to do Work Related Activities." AR at 795. According to the treatment providers, plaintiff has "low IQ, difficulty managing his emotions, short attention span [and] poor impulse control." AR at 796. Plaintiff's impairment affected his ability to follow directions and handle "stressful situations." AR at 796. In this report, plaintiff was described as "highly supported by" and "quite dependent" on his mother. AR at 796. The treating providers again opined that they did not believe plaintiff "can function independently enough to manage finance and health on his own." AR at 796-797.

It is well-settled that where an ALJ gives a treating physician's opinion something less than "controlling weight," he must provide good reasons for doing so.[1] Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we

---

[1] This so called "treating physician rule" was in effect at the time plaintiff's claim was filed.

6

encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations, and alterations omitted).

Here, the ALJ assigned what he described as "partial weight" to the medical opinions of the claimant's treating mental health providers. AR at 44. His justifications meet neither the letter nor the spirit of the treating physician rule.[2] According to the

---

[2] Throughout the decision, the ALJ stated that it was NP Murray who had "opined" and referred to "her opinion." AR at 44. To the extent the ALJ did not accord controlling weight to the opinions set forth in the two reports because they were reports co-signed by the treating psychiatrist, that would be error.

7

ALJ, Dr. Susco and NP Murray's opinions were not entitled to more that partial weight because the "15-point scale is misleading"; "[t]here is nothing in the claimant's medical record that supports limitations this severe," and NP Murray "had only seen the claimant for barely two months before she completed this report." AR at 44. First, the Court has examined the two opinions at issue closely and is unable to discern what "15-point scale" the ALJ is referring to, let alone why any scale in either form is "misleading." The medical source statements in the record do not contain 15 points and nowhere does the statement indicate that plaintiff is disabled because he is not "fully capable" of performing work functions, as the ALJ contends. Indeed, contrary to the ALJ's assertion, the medical source statements clearly define the meaning of the terms used in the reports to assess plaintiff's capabilities and limitations. For example, the term "occasionally capable" is defined to mean 65% to 33% of the time. AR at 795. It is of no moment that the ALJ appears to disagree with the definition of these terms. What matters is that the terms are clearly defined and plaintiff's abilities and limitations clearly and unequivocally noted.

---

"Reports co-signed by a treating physician may be evaluated as having been the treating physician's opinion." Beckers v. Colvin, 38 F. Supp. 3d 362, 372 (W.D.N.Y. 2014); see Keith v. Astrue, 553 F. Supp. 2d 291, 301 (W.D.N.Y. 2008) (directing that the ALJ evaluate treatment notes drafted by a nurse practitioner and co-signed by a physician in accordance with the treating physician rule on remand).

Second, the ALJ contends that the record does not support the limitations in the medical source statement. With one exception, it is not clear from the ALJ's decision what parts of the medical source statement the ALJ finds objectionable and conflicting with other evidence. The record contains examples of plaintiff's marked limitation for performing complex tasks and dealing with stress, limitations that do not appear to be incorporated into the residual functional capacity ("RFC"). AR at 724 ("[H]e is markedly limited in performing complex tasks independently and requires supervision"); AR at 137 ("[H]as difficulty w/ multistep directions and freq needs things repeated to him [sic]"). Finally, although the ALJ is correct that the length of a treating relationship can be a relevant factor in determining the weight to assign an opinion, the relationship between plaintiff and treating sources here was not so short as to compel discrediting the opinion. The ALJ gave only "partial weight" to the treating physician's opinion because NP Murray "had only seen the claimant for barely two months before she completed this report." AR at 44. Aside from the fact that the reports were signed by both NP Murray and Dr. Susco, there is nothing to indicate that their opinions are limited because their involvement with plaintiff was fairly recent. Dr. Susco or NP Murray saw plaintiff every 2-4 weeks for over 10 weeks. Indeed, Dr. Susco and NP Murray saw plaintiff more continuously than any other provider in the record

9

who supplied an opinion. And, oddly, the ALJ had no issue with the length of the treatment relationship in finding that plaintiff's treatment sessions with Dr. Susco and NP Murray "appears to be effective" (AR at 42) and that he "has made good progress with compliance to psychotherapeutic intervention" with NP Murray. AR at 43.[3]

Equally unfair was the ALJ's apparent discounting of plaintiff's credibility because he "has been discharged numerous times from outpatient mental health care due to inconsistent attendance and 'because he does not feel he needs treatment.'" AR at 43. "In assessing the plaintiff's failure to follow through with recommended mental health treatment, the ALJ failed to consider the impact of the plaintiff's mental illness itself. Courts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment." Sparks v. Barnhart, 434 F. Supp. 2d 1128, 1136 (N.D. Ala. 2006) ("To find the plaintiff not credible because she exhibits precisely the sort of symptoms that her mental illness would be expected to cause is illogical and improper."); see Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) ("[F]aulting a person with

---

[3] The ALJ also found that Dr. Susco opined "that even with cannabis use, the claimant was not disabled." AR at 44. After reviewing the letter opinion (AR at 833), the Court believes the ALJ was mistaken. Dr. Susco and NP Murray responded to the "check the box" form by indicating that it was false that the THC abuse causes impairments "but the other impairment(s) is/are irreversible or could not improve to the point of non-disability." AR at 833. Nevertheless, the ALJ's confusion in this regard is understandable as the questions posed in letter form are virtually unintelligible.

diagnosed mental illness for failing to pursue mental health treatment is a questionable practice.") (internal quotation marks omitted).

The ALJ's treatment of the remaining opinion evidence in the record was also problematic. The one specific piece of opinion evidence that most closely aligned with the RFC assigned to plaintiff was from state agency consultant E. Kamin, Ph.D. As the ALJ noted, Dr. Kamin opined that plaintiff "could perform simple tasks in a work environment in which he had limited contact with the public." AR at 44. Although this opinion aligned with the RFC chosen by the ALJ, the ALJ gave the overall opinion only "limited weight" because it was "completed without the benefit of all the current medical evidence of record." AR at 44. Yet, the more current medical evidence supplied by the treating sources presented more limited work restrictions and were also discounted by the ALJ. In any event, Dr. Kamin is a psychological "consultant" who appears to have never even met with or spoken to plaintiff. "In the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." Velazquez v. Barnhart, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a

cold, medical record"); see Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); Rodriguez v. Astrue, No. 07CIV.534 WHPMHD, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009) ("[A] doctor who has direct contact with a claimant—even as an examining doctor—is likely to have a better grasp of her condition than someone who has never seen the claimant."); Filocomo v. Chater, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Finally, the ALJ gave what he characterized as "partial weight" to the opinion of "consulting psychologist" Dr. Adam Brownfeld. AR at 721. Dr. Brownfeld met with plaintiff on a single occasion and found his attention and concentration impaired, his recent and remote memory skills impaired, his intellectual functioning to be in the "low average to borderline range" and "markedly limited" in "appropriately dealing with stress" and "requires supervision." AR at 723-24. It is unclear what "parts" of Brownfeld's opinion were credited by the ALJ, but courts in our circuit have warned ALJs on the danger of relying on such "single meeting" evaluations, particularly when it comes to mental health opinions. In general, "ALJs should not rely heavily

12

on the findings of consultative physicians after a single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). This is because "consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990); see also Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'") (quoting Cruz, 912 F.2d at 13).

In sum, after reviewing the several mental health opinions in the record, including two treating sources, the ALJ did not assign significant weight to any particular opinion in forming an RFC. Instead, the ALJ chose terms like "limited weight" and "partial weight" in justifying his analysis. By failing to give more than partial or limited weight to any opinion and then declining to identify what parts of the opinion were assigned these weights, the plaintiff is left to wonder what medical opinions constituted the substantial evidence supporting the non-exertional limitations in his RFC. An ALJ's decision to formulate an RFC without specifically crediting medical opinion evidence of record is particularly fraught with peril in the context of disability based on mental illness. Unlike exertional limitations, an ALJ should not be permitted to have the discretion to make "common sense"

13

judgments about mental health impairments. "[T]he leeway given to ALJs to make 'common sense judgments' does not necessarily extend to the assessment of mental limitations, which are by their very nature 'highly complex and individualized.'" Deshotel v. Berryhill, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) quoting Nasci v. Colvin, 2017 WL 902135 at *9 (N.D.N.Y. 2017) ("The Social Security Rulings underscore the highly complex and individualized nature of mental impairments, which may impact both exertional and nonexertional work functions.").

Where, as here, the ALJ does not give controlling or significant weight to any of the medical opinions of record and instead only gives "some weight" or "limited weight" to all the opinions, it is reasonable to assume that the ALJ must have relied upon the raw medical data to form his own "common sense" RFC. As stated above, this was error requiring remand. See Jones v. Berryhill, No. 16-CV-6042 CJS, 2017 WL 2222245, at *8 (W.D.N.Y. May 22, 2017) ("[U]pon remand the ALJ should explain what medical opinions she relied upon in formulating the RFC, in light of her decision to give only 'some' or 'limited' weight to all of the medical opinions.").

## Conclusion

For the foregoing reasons, the plaintiff's motion (Docket # 12) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 16) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 27, 2019
Rochester, New York